## TILLETT v. RODGERS et al.
### Civ. No. 77–M.

United States District Court
N. D. West Virginia.
Aug. 25, 1949.

Milton Kaplan, Washington, D. C., for plaintiff.

Clarence E. Martin, Jr., Martinsburg, West Virginia, for defendants.

BAKER, Chief Judge.

This is an action in which the plaintiff asserts the ownership of ³⁄₄₀ of a tract of land in Berkeley County, West Virginia, which land consists principally of an apple orchard; or, in the alternative, to recover the sum of $3,000, plus interest, alleged by the plaintiff to have been paid by the plaintiff's assignor for said interest.

An answer was filed denying that the plaintiff is the owner of any interest whatever in the land, denying any liability to him for any sum of money, and asking as affirmative relief that the plaintiff be required to execute a release of any claim against the property in order to remove the cloud upon the title.

Interrogatories were filed by the plaintiff and answered by the defendants, and Interrogatories were filed by the defendants and answered by the plaintiff.

A pre-trial conference was held at which practically all of the facts involved were stipulated. At the conclusion of the pretrial conference, the defendants moved for judgment on the pleadings and the stipulations. The plaintiff stated that he did not wish to introduce any testimony, and that he was willing to rest the case upon the defendants' motion.

I now find the following facts from the pleadings, plus the stipulations entered into:

In 1920 Decatur H. Rodgers and Ernest L. Luttrell, of Martinsburg, West Virginia, were law partners engaged in the practice of law in that city. One, Peggy Silver, was a secretary employed by the partnership of Rodgers and Lutrell. In 1920 the partnership purchased from Homer C. Small the property involved. Small retained a vendor's lien for an unpaid portion of the purchase price.

On June 6, 1932, E. L. Luttrell sold to Peggy Silver ³⁄₂₀ of his one-half interest in this property for the sum of $3,000. It was agreed, however, that the sale was to be effective as of September 17, 1930, and was made by Luttrell and accepted by Miss Silver subject to all debts existing against the real estate as of the latter date.

On June 14, 1938, Peggy Silver transferred to Theodore Tillett, the plaintiff, her interest in this property for the sum of $1. Tillett admits that this was all he paid for his alleged interest in the real estate.

On January 10, 1928, a Deed of Trust was duly recorded to secure a loan of $8,615.14, made by Mary Rodgers to the part-

nership, and used by the partnership in the orchard business.

On December 11, 1922, there was duly filed and recorded a Deed of Trust against the real estate, securing a loan made by one, Goodwyn, of $12,000 to the partnership, and used by the partnership in its orchard business.

On September 17, 1930, the effective date of the sale from Luttrell to Silver, the partnership was insolvent. It then still owed $10,000 on the purchase price of the real estate, and had other debts in excess of $52,000. From September 17, 1930, to the time the partnership was dissolved, its debts were never less than $45,000.

On August 21, 1940, Homer C. Small and wife conveyed the real estate involved to Luttrell and Rodgers as a partnership for the sum of $6,000 cash and a thirty-day note for $10,000. A Deed of Trust was made by the partners to secure this note; the defendant, R. H. Boyd, being the Trustee named therein.

On August 30, 1940, the partnership was dissolved. By the terms of dissolution, Luttrell conveyed to Rodgers all of his right, title and interest in and to the partnership assets, including the real estate involved herein. As consideration for this, Rodgers assumed payment of all the partnership indebtedness, except two small debts which did not amount to more than $3,450, payment of which were assumed by Luttrell.

The holder of the notes secured by the Deed of Trust given August 21, 1940, notified R. H. Boyd, the Trustee, to sell the property. This sale was properly advertised and was made at public auction. At that sale the defendant, Rodgers, purchased the property for $18,000. It is stipulated that this amount represented the fair market value of the property as of the date of sale. It is admitted by the defendants that the conveyance from Small and the Deed of Trust made on August 21, 1940, was a plan adopted for winding up the partnership affairs, and that this plan was adopted as being simpler and quicker than a formal suit in equity to dissolve the partnership and marshal its assets.

Upon the aforesaid facts, I find the law to be as follows:

There was no fraud by any of the defendants in the transaction by which Small was given the Deed of Trust under which the property was sold. All of the partnership creditors were amply protected and it was generally understood exactly what was being done. Small, of course, had the right to sell and convey his own property to any one he wished, because the partnership of Rodgers and Luttrell was then twenty years in default upon their agreement to purchase the real estate. He could have sold it to an absolute stranger had he wished. Collins v. Thomas, 87 W.Va. 597, 105 S.E. 897; Broemsen v. Agnic, 70 W.Va. 106, 73 S.E. 253.

I do not think it necessary to do more than state the fact that the plaintiff, Tillett, could not possibly have any higher claim to the real estate than his assignor, Peggy Silver. The contention is made that at the time of the deed from Small to the partnership, Luttrell could not, by a Deed of Trust, encumber Silver's interest in the real estate. This, however, overlooks the fact that Miss Silver, at the time of her purchase from Luttrell, acquired at best 3/20 of his, Luttrell's, eventual interest in the partnership. At the time of the deed from Small to the partnership, the partnership was insolvent and Luttrell's interest in the property was nothing. In fact, Luttrell might have, had he wished, forced Peggy Silver to contribute 3/20 of what he lost in the transaction.

At the time of the deed from Small to the partnership and the sale under the Deed of Trust, Small could have brought a suit in equity to subject the land to the payment of his vendor's lien. Had he done this, his claim would have been audited as a first lien against the property. This lien would have been followed by the Deeds of Trust to Goodwyn and Mary Rodgers as second and third liens. These would have been followed by unsecured debts arising from the maintenance and operation of the orchard by the partnership. These unsecured debts would, in turn, have been followed by the cash advances made by Rodgers and Luttrell to the partnership for its

operation. Only after all of the above would Peggy Silver's claim have been reached. To do this the property would have to have sold for more than $70,000 when it is stipulated that its fair market value was $18,000. I do not think it necessary to go any further in discussing the value of any claim Peggy Silver might have had in this property.

As to the claim for $3,000, I deem it necessary only to say that Peggy Silver really bought into the partnership at the time of her deal with Luttrell. At that time, and for many years prior thereto, Miss Silver had kept all the partnership books and records. She wrote the checks by which partnership funds were paid out. She made all the bank deposits of partnership assets. She wrote letters to partnership creditors asking extensions of time in which to pay debts. In short, she knew as much about the partnership affairs as either of the partners. She went into the transaction with her eyes wide open and fully conversant with all the facts. She is really fortunate, in my opinion, that Rodgers and Luttrell did not take steps to compel her to contribute ¾0 of the partnership losses.

The plaintiff has accused Rodgers and Luttrell of having unclean hands because of the method employed to wind up the partnership affairs. However, the plaintiff admits that his total investment in this business is $1. He and his assignor waited from 1930 until 1948 before asserting any claim. If he ever had a claim against this property, it was barred under the law of West Virginia after a period of five years. Due to the fact that the war, which began more than a year after the partnership's dissolution greatly inflated the value of all property and particularly the value of apple orchards, this land is now worth considerable money. Owing to that happy circumstance Rodgers has been able to recover most, if not all, of his prior losses in this business. Now, Tillett seeks, for $1 paid years ago, to get a ¾0 interest in that property. There is no question whatever but that the equities in this case are all in favor of Rodgers.

I, therefore, hold that the defendants are entitled to judgment upon their motion, and that the plaintiff, Tillett, be required to execute a proper release of all claim to the property and to deliver such release to the defendant, Rodgers.

All proper costs of this case will be taxed against the plaintiff.

I ask counsel to agree upon a form of order if they can do so. If they can not agree, I direct them to come before me at the Martinsburg September Term, at which time a proper order will be prepared and entered.