488 S.E.2d 49

**John F. HOLLERAN, Plaintiff Below, Appellant,**

v.

**Angie COLE, Defendant Below, Appellee.**

**No. 23866.**

Supreme Court of Appeals of West Virginia.

Submitted April 30, 1997.

Decided May 30, 1997.

Melvin C. Snyder, III, Kingwood, for Appellant.

Lawrence S. Miller, Jr., James T. Dailey, Jr., Dailey & Miller, Kingwood, for Appellee.

PER CURIAM:

This action is before this Court upon an appeal from the final order of the Circuit Court of Preston County, West Virginia, entered on March 11, 1996. In the action, the appellant, John F. Holleran, who acquired property and a building thereon in Preston County, by deed, challenged a separate written agreement made between certain of his predecessors-in-title, including the appellee, Angie Cole. The agreement provided that the appellee could continue to reside in a six-room apartment on the second floor of the building for the remainder of her life or until she should vacate the apartment. As reflected in the final order, the circuit court granted summary judgment for the appellee, allowing her continued occupancy.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons expressed below, and particularly because, at the time of his purchase of the property, the appellant had actual knowledge of both the written agreement and the appellee's occupancy of the apartment, this Court affirms the final order.

I

The facts are undisputed. The appellee, a 79–year–old widow, was the owner of a two-story building near Masontown in Preston County. The bottom floor of the building was used as a tavern known as "The White Horse Club." The floor above contained various apartments, including a six-room apartment occupied by the appellee. The appellee had resided in the apartment for approximately thirty-two years.

By deed dated March 15, 1989, the appellee conveyed the property to Samuel and Paula St. Clair for $125,000. The deed included covenants of general warranty and made no mention of a separate agreement or of any interest to be retained by the appellee. Nevertheless, contemporaneous with the deed and "as part of the consideration for the sale," the appellee and the St. Clairs entered into a separate written agreement whereby the appellee could continue to reside in the six-room apartment for the remainder of her life or until she should vacate the apartment. As the agreement specifically stated:

First Party [the appellee] shall have the right to continue to occupy rent free the six (6) room apartment wherein First Party now resides, which is located on the second story of the structure known as The White Horse Club, in Valley District, Preston County, West Virginia, such right of rent free occupancy by First Party to continue for the remainder of First Party's natural life or until First Party should vacate said apartment, whichever should first occur. The right of First Party to occupy the six (6) room apartment is personal to First Party and cannot be assigned or sublet by First Party to any other person or persons.

In addition, the agreement stated that the appellee would be provided with heat and

water, without charge, for the apartment and that the appellee had the right to use the garage located upon the premises. As the record reflects, the appellee continued to reside in the apartment following the making of the agreement. However, the agreement was not recorded until sometime after the appellant acquired title to the property.

By deed dated December 27, 1994, Samuel and Paula St. Clair conveyed the property to Phyllis Hamon and Jerry Moore. The deed to Hamon and Moore included covenants of general warranty and made no mention of the agreement between the appellee and the St. Clairs or of any interest to be retained by the appellee. Thereafter, by deed dated April 13, 1995, Phyllis Hamon and Jerry Moore conveyed the property to the appellant. As in the case of the prior deeds, the deed to the appellant included covenants of general warranty and made no mention of the agreement or of any interest to be retained by the appellee. Importantly, however, the record is undisputed that, at the time of his purchase of the property, the appellant had actual knowledge of both the agreement between the appellee and the St. Clairs and the appellee's occupancy of the apartment. As the petition for appeal states with regard to the agreement: "Plaintiff does not dispute that he was generally aware of the Cole/St. Clair Agreement at the time he purchased the property from Phyllis Hamon and Jerry Moore [.]"

In August, 1995, the appellant instituted an action against the appellee in the Magistrate Court of Preston County. In the action, the appellant indicated that the appellee should either execute a lease for the apartment, with rent payable to the appellant, or vacate the premises. *W. Va.Code*, 55–3A–1 [1983]. Upon the appellee's motion, however, the action was transferred to the Circuit Court of Preston County because, inasmuch as the action ostensibly involved a disputed title to real estate, the action was beyond magistrate court jurisdiction. *W. Va. Const.* art. VIII, § 10; *W. Va.Code*, 50–2–1 [1994].

During the litigation in circuit court, the appellant and the appellee both moved for summary judgment. In support of his motion, the appellant relied upon the deeds in his chain of title to the property and, primarily, upon the deed from the appellee to Samuel and Paula St. Clair. As stated above, none of those deeds mentioned the separate agreement or any interest to be retained by the appellee. Thus, according to the appellant, the agreement was a matter between the appellee and the St. Clairs only and not binding on him.

On the other hand, in support of her motion for summary judgment, the appellee relied upon the terms of the agreement and the undisputed fact that the appellant had actual knowledge of both the agreement and the appellee's occupancy of the apartment. As counsel for the appellee argued before the circuit court: "[T]he deeds from St. Clair to Hamon and Moore and the deed from Hamon and Moore to Holleran are subordinate to the unrecorded agreement ... because all of those parties had actual and constructive knowledge that [the appellee] was in occupancy of the six room apartment [.]"

On March 6, 1996, the circuit court conducted a hearing upon the respective motions for summary judgment and concluded that the appellant acquired the property subject to the agreement between the appellee and the St. Clairs. As the circuit court stated:

[T]he Court concludes that as a matter of law under the undisputed facts in this case that [the appellant] took this property with knowledge of the rights of Angie Cole and that he is bound by that agreement. Since it is now—the Court can see some other interesting factual scenarios that the Court is not going to discuss because they are not relevant to this inquiry, but she would have the right under that agreement and Mr. Holleran would have to honor and abide by the terms of that agreement because he bought it with knowledge of that agreement even though he was not an original grantee or an original party to the agreement.

Accordingly, as reflected in the final order, the circuit court granted summary judgment for the appellee. This appeal followed.

II

■ Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure*, summary

judgment is warranted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 426–42 (Michie 1960). Thus, as this Court observed in syllabus point 5 of *Wilkinson v. Searls,* 155 W.Va. 475, 184 S.E.2d 735 (1971):

A motion for a summary judgment should be granted if the pleadings, exhibits and discovery depositions upon which the motion is submitted for decision disclose that the case involves no genuine issue as to any material fact and that the party who made the motion is entitled to a judgment as a matter of law.

*See also* syl. pt. 1, *Wayne County Bank v. Hodges,* 175 W.Va. 723, 338 S.E.2d 202 (1985).

■ Of course, as this Court stated in syllabus point 1 of *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994): "A circuit court's entry of summary judgment is reviewed *de novo.*" *See also* syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995).

In this action, the issue is a narrow one. As recognized by the circuit court, the question of the effect of the agreement between the appellee and the St. Clairs upon the appellant's chain of title to the property is limited by the fact that the appellant (1) knew of the agreement at the time he purchased the property and (2) knew that the appellee was residing in the apartment. As indicated above, the appellant asserted that, in view of the deeds in his chain of title, the agreement was only binding between the appellee and the St. Clairs. The appellee, on the other hand, emphasized the appellant's actual knowledge of the circumstances when he purchased the property.

■ Generally, the execution of a deed, unambiguous in its terms, is not subject to contradiction by collateral agreements or contracts between the parties. Syl. pt. 1, *Watson–Loy Coal Co. v. Monroe Coal Mining Co.,* 85 W.Va. 645, 102 S.E. 485 (1920); syl. pt. 7, *William James Sons Co. v. Hutch-*

*inson,* 79 W.Va. 389, 90 S.E. 1047 (1916). That principle, however, is not absolute, as evidenced by the cases of *Farrar v. Young,* 159 W.Va. 853, 230 S.E.2d 261 (1976), and *Malone v. Schaffer,* 178 W.Va. 637, 363 S.E.2d 523 (1987), relied upon by the circuit court.

In *Farrar,* two brothers entered into an agreement for the payment of royalties to their father for the removal of minerals, *etc.,* from a tract of land in Mercer County. Thereafter, the brothers acquired the property by deeds with covenants of general warranty and "free of all liens and encumbrances." In *Farrar,* this Court, noting that the brothers had "full notice" of the agreement, held that their acquisition of the property was subject to the agreement. As the *Farrar* opinion states:

When the Farrar brothers took as grantees under the separate deeds of May 12, 1965, they took with full knowledge of the existence of the agreement containing the subject royalty provisions. Therefore, although the deeds were executed, delivered and recorded prior to the recordation of the agreement, they were not purchasers for value *without notice* [.]

(emphasis in original). 159 W.Va. at 860, 230 S.E.2d at 265.

■ In *Malone,* this Court held that a deed, in the circumstances therein, should be set aside where the grantees (1) had "actual notice" of the claim of another to the property and (2) failed to determine or investigate the validity of the claim. In *Malone,* this Court relied, in part, upon syllabus point 3 of *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.,* 63 W.Va. 685, 60 S.E. 890 (1908), which states:

That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser.

*See also* syl. pt. 3, *Gullett v. Burton,* 176 W.Va. 447, 345 S.E.2d 323 (1986).

Here, it should be noted that in granting summary judgment for the appellee, the circuit court did not specifically define the agreement between the appellee and the St. Clairs as either a life estate or a lease. *See* 7A M.J., *Estates,* § 20 (Michie 1985), indicating that, ordinarily, life estates are created by an express act of the parties, either by deed or by will. Indeed, in this action, the agreement was stated to be "part of the consideration for the sale" to the St. Clairs and would terminate whenever the appellee chose to vacate the premises. Moreover, the appellee has refused to execute a lease for the property with the appellant. Nor was the agreement of the type wherein a family, as purchaser of real property from an elderly family member, promises to "support" such a member for life. *See Frasher v. Frasher,* 162 W.Va. 338, 249 S.E.2d 513 (1978). Rather, the circuit court, in this action, relied upon *Farrar* and *Malone* as involving circumstances relatively similar to those herein.

In reviewing this matter, this Court has, likewise, found no authority in West Virginia more close in line to these circumstances than *Farrar* and *Malone.* We note, however, the decision of the Court of Appeals of Arkansas in *Ruth v. Lites,* 267 Ark. 752, 590 S.W.2d 322 (1979). In *Ruth,* James Ruth deeded a tract of land to Dr. L. Routen, who, in turn, deeded the land to J.B. Lites. Thereafter, Ruth sought title to the land by contending that the transactions involved a loan to him and that the deeds constituted nothing more than a mortgage of the property. In *Ruth,* however, the Arkansas court concluded that the deeds were absolute conveyances and not a mortgage. Nevertheless, the court further concluded that, as a matter of equity, J.B. Lite was required to honor an agreement he had made with Ruth to allow Ruth and Ruth's wife to reside upon the property as long as they desired.

Here, the assertion of the appellant that the agreement was a matter between the appellee and the St. Clairs only, and not binding upon him, is unconvincing. The agreement expressly stated that the appellee could reside in the apartment for the remainder of her "natural life" or until she "should vacate" the premises. Thus, the clear implication of the agreement is that the appellee could continue to reside in the apartment in the event the St. Clairs were to sell the property. Moreover, as the appellant stated: "[H]e was generally aware of the Cole/St. Clair Agreement at the time he purchased the property from Phyllis Hamon and Jerry Moore [.]" Accordingly, the appellant was not a purchaser without notice of the agreement, and, as the circuit court concluded, the appellant acquired the property subject to it. In addition, the appellant had actual knowledge that the appellee was occupying the apartment. The appellee had resided there for approximately thirty-two years, and as the brief of the appellee observes: the appellant was "charged with knowledge of what he observed or what a reasonably prudent person would have observed namely, that Angie Cole who was a prior owner of the property was still in possession of the six room apartment and garage."

 Upon all of the above, therefore, this Court is of the opinion that, under the undisputed facts of this action, the appellant was not an innocent purchaser of the property in question and, instead, acquired the property subject to the separate written agreement executed by the appellee and the St. Clairs. *See Malone, supra.* Accordingly, the Circuit Court of Preston County ruled correctly in granting the summary judgment for the appellee, and the final order of March 11, 1996, is affirmed.

Affirmed.